## JOHNSON v. ZURICH GENERAL ACCIDENT & LIABILITY INS. CO., Limited.

### No. 5070.

Court of Appeal of Louisiana. Second Circuit.

June 4, 1935.

Frank T. Doyle, of New Orleans, and W. Potts Clark, of Monroe, for appellant.

Harry Fuller, of Winnfield, for appellee.

MILLS, Judge.

Mark W. Johnson, husband of plaintiff, was employed, during the month of August, 1933, by the Emergency Relief Administration as night watchman in the town of Columbia, Caldwell parish, La. In the performance of his duties he was so zealous that other officials of the town and parish became resentful of what they considered an encroachment on their prerogatives. They and certain citizens conceived the fantastic idea of putting him in his place by playing upon him a practical joke. The pitiful prank as carried out is

thus described in an agreed statement of fact:

"* * * The deceased was on duty as night watchman in the village of Columbia at the time said joke was perpetrated; that the deceased went to the rear of a building to investigate a noise caused by some of the above named parties; and that at the time the practical joke was perpetrated by the deceased being disarmed and carried across the Ouachita river bridge to a point outside of the corporate limits of the village; that in order to make the joke realistic the deceased was informed by the members of the party carrying out the joke that they had come to Columbia that night for the purpose of liberating three prisoners who were confined in the parish jail on a charge of shooting and wounding two persons while attempting to perpetrate a robbery—the said charge being a capital offense and said prisoners having been convicted as charged and being held in jail pending an appeal from said conviction to the Supreme Court; that the deceased was released without any physical harm having been done to him and allowed to return on foot to the village of Columbia."

The statement further recites that: "The acts of the parties in perpetrating this practical joke frightened and alarmed the deceased, and that said fright either caused heart failure or accelerated the condition of the deceased's heart to such an extent that he died of heart failure."

The death occurred the night of, and shortly after, the above occurrence.

Plaintiff's suit, brought under the Workmen's Compensation Act (Act No. 20 of 1914, as amended) against the insurer of her husband's employer, claims the minimum allowance of $3 per week for 300 weeks, and $120 for funeral and medical expenses. It is resisted on the ground that the facts as agreed upon do not constitute an accident within the provisions of Act No. 20 of 1914 as amended, and that, if it is found that an accident is established, same did not occur during the course of or arise out of the employment. It is conceded that, if defendant is liable, the amount claimed is correct.

The lower court, in a well-considered written opinion, found for the plaintiff on both the contested issues and rendered judgment accordingly, from which defendant has appealed.

■ As deceased was on duty at the time and went to investigate the noise because it was his duty so to do, unquestionably the ensuing farce occurred during the course of his employment. For the same reason, and for the further reason that he was subjected to this ordeal because of the manner in which he performed his duties, we have no hesitancy in holding that it arose out of his employment. Dyer v. Rapides Lumber Co., 154 La. 1091, 98 So. 677; Byas v. Hotel Bentley, 157 La. 1030, 103 So. 303; Guderian v. Sterling Sugar & R. Co., 151 La. 59, 91 So. 546; Ferguson v. Cady-McFarland Gravel Co., 156 La. 871, 101 So. 248; Myers v. Louisiana Ry. & Nav. Co., 140 La. 937, 94 So. 256; Ivory v. Philpot Const. Co. (La. App.) 145 So. 784.

The only remaining question is that of accident vel non.

■ We do not consider that the situation is altered in the least by the fact that the whole matter was a joke. It was real to deceased. The scheme was concocted with the idea of severely frightening him. It is admitted that it was executed so realistically that its victim died from that intended fright. Though in a distorted sense of fun, the occurrence was an attack upon the deceased. Had his assailants shot or beaten him so that he died, his right to recover would be unquestioned.

The act as amended (Act No. 20 of 1914, § 38 as re-enacted by Act No. 38 of 1918, p. 60, § 38) thus defines the word "accident": "An unexpected or unforeseen event happening, suddenly or violently, with or without human fault and producing at the time objective symptoms of an injury."

In the present case, the event was unexpected and unforeseen; it happened suddenly and by a violent and sudden display of unlawful force put, and was intended to put, the deceased in great fear of serious bodily injury or death. He suffered a sudden and violent shock to his heart. It is admitted that this shock either caused heart failure or accelerated a previous diseased condition of that organ, causing death. While this result was not due to a physical attack, it was caused by a physical demonstration of force. The distinction is the same as that between assault and battery. Where such a demonstration so shocks its object as to cause almost immediate death, we think that death is as certainly due to an accident as if actual force had been used.

As we find no error in the judgment of the lower court, it is affirmed.